# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# NORTHERN DIVISION

**SCOTT TYNER**                                                               **PLAINTIFF**

**VERSUS**                                  **CIVIL ACTION NO. 3:22-cv-00257-KHJ-BWR**

**BURL CAIN, et al.**                                                 **DEFENDANTS**

## **REPORT AND RECOMMENDATION**

Proceeding under 42 U.S.C. § 1983, *pro se* Plaintiff Scott Tyner filed this lawsuit on May 13, 2022, Compl. [1], and his allegations were clarified at an Omnibus Hearing on March 29, 2023.[1] At all relevant times, Plaintiff has been housed at the East Mississippi Correctional Facility ("EMCF") in Meridian, Mississippi, in the custody of the Mississippi Department of Corrections ("MDOC"). *Id.* at 2, 4. He names as Defendants Commissioner Burl Cain, Warden Donald Jackson, Unit Manager Loretta Crockett, and Management & Training Corporation ("MTC"). *Id.* at 2-3; Order [46]; Second Am. Compl. [47]. Having paid the requisite filing fee, Plaintiff is not proceeding *in forma pauperis*. *See* Order [7].

Before the Court are two dispositive motions: (1) a Motion [57] for Summary Judgment for Failure to Exhaust Administrative Remedies filed by MTC, Jackson, and Crockett ("the MTC Defendants") and (2) a Motion [79] for Summary Judgment for Failure to Exhaust Administrative Remedies filed by Commissioner Cain. Both Motions [57] [79] are opposed. Resp. [76]; Mem. [77]; Resp. [82]. For the following

---

[1] *See Spears v. McCotter*, 766 F.2d 179, 181-82 (5th Cir. 1985) (authorizing the magistrate judge to "hold an evidentiary hearing" to allow a *pro se* plaintiff to provide a "more definite statement"), *abrogated on other grounds by Neitzke v. Williams*, 490 U.S. 319, 324 n.3 (1989).

reasons, the undersigned recommends that both Motions [57] [79] for Summary Judgment be granted in part and denied in part. Plaintiff's claims about secondhand smoke were properly grieved and should proceed, but his allegations about prison management, understaffing, and conspiracy were not properly grieved and should be dismissed.

## I. BACKGROUND

### A. Plaintiff's Allegations

Plaintiff purports to bring this lawsuit "on behalf of himself and all others similarly situated." Compl. [1] at 1. Plaintiff testified that he was transferred to EMCF in August 2017 and has since been exposed to "toxic environmental conditions." *Id*. at 4. He claims that EMCF permits smoking in his housing pod, so he inhales vapors from other inmates smoking "tobacco, spice, marijuana, crystal methamphetamine, toilet paper and plastic."[2] *Id*. As a former addict, Plaintiff explained that the smoke causes "cravings" and that he is "worr[ied] about relapsing." Am. Compl. [25] at 30.

Plaintiff testified that these conditions have impacted the quality of his housing. For example, Plaintiff recounts that he was once housed with a cell mate who smoked; when Plaintiff requested that he stop, the cell mate threatened Plaintiff with bodily harm. *Id*. at 8-9. Eventually, EMCF staff offered to relocate Plaintiff to

---

[2] According to MDOC Policy 01-16, inmates may smoke tobacco products "in designated areas at each correctional facility that houses state offenders," but no one "will be allowed to smoke in . . . inmate housing units." Mot. [79-1] at 1-2 (emphasis removed). Plaintiff complains that inmates housed in his pod have ignored this policy without reprisal.

2

another housing unit, which Plaintiff refused because it was allegedly "controlled by members of Security Threat Groups." *Id*. at 10-11. Finally, Plaintiff says that he was housed in "the hole" for a period. *Id*. at 11.

Plaintiff testified that he was also once allowed to live in the Alcohol and Drug ("A&D") Program Zone for "over four months," but minimal smoking and drug use occurred there too. Compl. [1] at 14-15. Plaintiff enjoyed living in the A&D Zone because most of the rules were enforced, but he believes that he was moved "for reporting black racism." Am. Compl. [25] at 18. Plaintiff testified that he no longer wishes to live in the A&D Zone because those inmates are required to attend alcohol and drug rehabilitation classes for 6 hours per day—a requirement that Plaintiff does not wish to undertake.

Plaintiff admits that he has not yet suffered a tangible injury because of these conditions, "besides worse allergies." Compl. [1] at 5. Nonetheless, he fears injuries and diseases that may occur in the future—including "asthma, every form of cancer, COPD, death, heart attack, heart disease, stroke, osteoporosis, and vascular disease." *Id*. He also complains that "these smokes are annoying and [they] stink." *Id*. at 17.

In addition to his claims about secondhand smoke, Plaintiff alleges that Defendants engaged in "conspiracy and fraud" to deceive EMCF employees and inmates into believing that they may smoke tobacco in residential zones. Am. Compl. [25] at 39. He also alleges that EMCF is understaffed and that MTC has failed to properly manage the prison. Second Am. Compl. [47] at 3.

3

Plaintiff asks the Court to enter a permanent injunction, ordering EMCF to create "clean living residential zones," in which smoking and drug use are prohibited. Compl. [1] at 6, 16. He also asks that EMCF's "rape and sexual assault hotline" be converted to "an all-purpose confidential crime hotline," through which smoking and drug use could be reported. *Id*. at 6-7. "[I]f he succeeds in his suit," Plaintiff requests "that he be reimbursed for all filing fees and court costs." *Id*. at 9. He also requests "that be . . . be refunded . . . for legal assistance, phone calls, mail services, postage and final resolution." Am. Compl. [25] at 40.

### B. Plaintiff's Administrative Grievances

Marco Ugalde is the Administrative Remedy Program ("ARP") Coordinator at EMCF. Mot. [57-6] at 1. In that capacity, he is "the custodian of the ARP files at EMCF," and he is "responsible for . . . oversight and management of the processing of inmate grievances and the daily operations of the inmate grievance system utilized at EMCF." *Id*. Ugalde testified by affidavit that Plaintiff has only submitted two administrative grievances "with complaints of excessive smoking in the residential zones by inmates or requesting the creation of a smoke-free residential zone at EMCF." *Id*. at 2.

The first of Plaintiff's administrative grievances was submitted on June 7, 2019, and numbered "EMCF-19-919." *Id*. Plaintiff asked "to be housed in a zone where measures are taken . . . to keep the zone free of tobacco and illicit drugs." Mot. [57-5] at 3. He complained that "smoke or second-hand smoke is unhealthy,

4

carcinogenic and/or annoying." *Id*. at 4. Plaintiff received a first-step response on July 24, 2019, advising that he could be moved "to another zone," but staff could not "guarantee . . . that no drugs will be present." *Id*. at 5. Plaintiff did not acknowledge on his first-step response form that he wished to proceed to step two, so EMCF-19-919 "was never completed." Mot. [57-6] at 2. "Accordingly, [Plaintiff] did not fulfill the requirements to seek judicial review" of his first administrative grievance. *Id*.

The second of Plaintiff's administrative grievances was submitted on April 15, 2021, and numbered "EMCF-21-274." *Id*. Again, Plaintiff complained that he was "required to breath[e] the noxious smoke from tobacco, illicit drugs, toilet tissue, and Bible paper." Mot. [57-5] at 10. Plaintiff hinted that he would like to be housed in the "Drug & Alcohol Program Zone," where he previously lived, but "Mr. Lee . . . informed [Plaintiff's] mother [that he] would not be allowed to go back." *Id*. at 11. Plaintiff also advised that he sent Warden Hector Portillo a request for "a genuine non-smoking zone," but he "never received any word from him regarding this issue." *Id*.

Plaintiff received a first-step response on May 6, 2021, advising that MDOC "cannot accommodate the designation of a smoke-free pod" because "it is established . . . that inmates can smoke in the facility." *Id*. at 13. Plaintiff indicated on the first-step response form that he "wish[ed] to proceed to Step Two" because "[t]he danger to [his] health from smoke still exists." *Id*. Plaintiff received a second-step response on May 19, 2021, advising again that "there will not be any relief." *Id*. at 14. Warden

Portillo noted that he "understand[s] [Plaintiff's] concern" but reiterated MDOC policy "to allow the use of tobacco products" within the facility. *Id*. Plaintiff signed the second-step response form on May 20, 2021, acknowledging receipt. *Id*. The second-step response form specifically advised that Plaintiff was "eligible to seek judicial review within 30 days" of receiving the second-step response. *Id*. Plaintiff initiated this lawsuit almost a year later—on May 13, 2022. Compl. [1].

## II.   STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Westfall v. Luna*, 903 F.3d 534, 546 (5th Cir. 2018) (quotation omitted). "An issue is material if its resolution could affect the outcome of the action." *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010) (quotation omitted). "On a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *E.E.O.C. v. WC&M Enters., Inc.*, 496 F.3d 393, 397 (5th Cir. 2007).

"Summary judgment is proper if the movant demonstrates that there is an absence of genuine issues of material fact." *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). "The movant accomplishes this by informing the court of the basis for its motion, and by identifying portions of the record which highlight the absence

6

of genuine factual issues." *Id.* "Rule 56 contemplates a shifting burden: the nonmovant is under no obligation to respond unless the movant discharges its initial burden of demonstrating entitlement to summary judgment." *Mack v. Waffle House, Inc.*, No. 1:06-cv-00559-RHW, 2007 WL 1153116, at *1 (S.D. Miss. Apr. 18, 2007) (quotation and brackets omitted). "[O]nce a properly supported motion for summary judgment is presented, the nonmoving party must rebut with 'significant probative' evidence." *Id.* (quoting *Ferguson v. Nat'l Broad. Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1978)).

### III. DISCUSSION

Defendants' Motions [57] [79] should be granted in part and denied in part. Plaintiff properly exhausted his available administrative remedies with respect to his claims about secondhand smoke, but he failed to exhaust his administrative remedies with respect to his claims about prison management, understaffing, and conspiracy. "Since exhaustion is a threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time, . . . judges may resolve factual disputes concerning exhaustion without the participation of a jury." *Dillon v. Rogers*, 596 F.3d 260, 272 (5th Cir. 2010).

Exhaustion of administrative remedies through the prison grievance system is a prerequisite for lawsuits filed under § 1983. *Wright v. Hollingsworth,* 260 F.3d 357, 358 (5th Cir. 2001); *see also* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law,

7

by a prisoner confined in a jail, prison, or other correctional facility until such administrative remedies as are available have been exhausted."). The Fifth Circuit Court of Appeals takes a "strict approach" to the exhaustion requirement. *Johnson v. Ford*, 261 F. App'x 752, 755 (5th Cir. 2008) (quotation omitted). "Exhaustion is mandatory for 'all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.'" *Alexander v. Tippah Cnty.*, 351 F.3d 626, 630 (5th Cir. 2003) (quoting *Porter v. Nussle*, 534 U.S. 516, 532 (2002)). Dismissal is mandatory where an inmate has failed to properly exhaust the applicable administrative grievance procedure before filing his complaint. *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012). "The [Prison Litigation Reform Act] attempts to eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006) (quotations and alterations omitted).

A prisoner cannot satisfy the exhaustion requirement "by filing an untimely or otherwise procedurally defective administrative grievance or appeal." *See id.* at 83-84. "Merely initiating the grievance process or putting prison officials on notice of a complaint is insufficient to meet the exhaustion requirement." *Evans v. Harrison Cnty. Adult Detention Ctr.*, No. 1:18-cv-00087-RHW, 2020 WL 980149, at *1 (S.D. Miss. Feb. 28, 2020). "The grievance process must be carried through to its conclusion

before suit can be filed under the Prison Litigation Reform Act." *Id.* A properly exhausted claim is one that has "complete[d] the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford*, 548 U.S. at 88. Those rules "are defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218 (2007).

Mississippi law authorizes MDOC to promulgate an "administrative review procedure at each of its correctional facilities." MISS. CODE ANN. § 47-5-801. MDOC thus established a "formal two-step process for handling inmate grievances." *Yankton v. Epps*, 652 F. App'x 242, 245 (5th Cir. 2016).[3] First, an offender "commences the process by writing a letter to the ARP Director," describing the claim and outlining the relief sought. Mot. [57-3] at 4. The ARP Director will then screen the request and respond to the offender within 40 days of receipt. *Id.* at 5. "An offender who is dissatisfied with the First Step response" may proceed to the second step. *Id.* A final decision will then "be made by the Superintendent, Warden or Community Corrections Director," and the offender will be notified of that decision within 45 days of receipt. *Id.* An offender who is dissatisfied with the Second Step response "may file suit in Court." *Id.* The MTC Defendants attached this policy as an exhibit to their Motion [57-3].

---

[3] The Court is familiar with this two-step process. *See, e.g., Shariff v. Evans*, No. 1:16-cv-00131-HSO-JCG, 2017 WL 4021129, at *3 (S.D. Miss. Aug. 9, 2017), *report and recommendation adopted by* 2017 WL 4010876, at *2 (S.D. Miss. Sept. 12, 2017).

This procedure is also described in detail in the MDOC Inmate Handbook. Mot. [57-4] at 17-18. The Handbook requires an inmate to "present as many facts as possible to answer all the questions [of] who, what, when, where, and how concerning the incident." *Id.* at 17.

But MDOC "has no specific requirement that the individual prison official be named" in the grievance. *Hayes v. Dunn*, No. 3:14-cv-00468-LRA, 2016 WL 884654, at *3 (S.D. Miss. Mar. 7, 2016). "[T]he primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued; the grievance is not a summons and complaint that initiates adversarial litigation." *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004). "When reviewing whether the substance of a prisoner's grievance is legally sufficient for exhaustion purposes, . . . the Court asks whether the prisoner's grievance provided fair notice to prison officials about the problem that formed the basis of his suit." *Cannady v. Woodall*, No. 1:20-cv-00130-HSO-RPM, 2022 WL 2783848, at *2 (S.D. Miss. Apr. 27, 2022) (quotation and alterations omitted), *report and recommendation adopted by* 2022 WL 2345760 (S.D. Miss. June 29, 2022).

Plaintiff's first administrative grievance, numbered "EMCF-19-919," was not "carried through to its conclusion." *See Evans*, 2020 WL 980149, at *1. That is, Plaintiff failed to proceed to the second step, so "he did not fulfill the requirements to seek judicial review." Mot. [57-6] at 2; *see also Pettis v. Hall*, No. 1:19-cv-00127-RPM, 2021 WL 785096, at *2 (S.D. Miss. Mar. 1, 2021) (holding that a plaintiff did not

10

exhaust his administrative remedies where he "did not appeal to the second step of the ARP process"); *Dahl v. Fisher*, No. 1:16-cv-00082-RHW, 2016 WL 7335645, at *2 (S.D. Miss. Dec. 16, 2016) (holding that certain claims must be dismissed where a plaintiff "did not complete the second step of the ARP procedure on any of them").

But Plaintiff's second administrative grievance, numbered "EMCF-21-274," sufficed to exhaust his administrative remedies with respect to his claim about secondhand smoke. In his administrative grievances, Plaintiff reported that inmates regularly smoke tobacco and illicit substances in residential areas at EMCF, and he asked prison officials to establish "a genuine non-smoking zone . . . for inmates . . . who don't smoke." Mot. [57-5] at 10-11. That is exactly the substance of the allegations raised in this lawsuit. Thus, Plaintiff "plainly gave prison officials a fair opportunity to address the problem that later formed the basis of the lawsuit." *See Cannady*, 2022 WL 2783848, at *3 (quotation and alterations omitted). His claims about secondhand smoke were properly exhausted and should proceed.

But Plaintiff's other claims, including those about prison management, understaffing, and conspiracy, were not raised in the grievance that he fully exhausted. "[A]n inmate cannot pursue a claim under § 1983 where he failed to adequately describe it through the grievance procedure, even though he set out the basis of another claim." *Taylor v. Hollins*, No. 3:16-cv-00866-LRA, 2018 WL 1572056, at *6 (S.D. Miss. Mar. 30, 2018) (collecting cases). The undersigned therefore recommends that Plaintiff's remaining claims be dismissed without prejudice for

11

failure to exhaust administrative remedies.

## IV.   RECOMMENDATION

The Motion [57] for Summary Judgment for Failure to Exhaust Administrative Remedies filed by Defendants Management & Training Corporation, Warden Donald Jackson, and Unit Manager Loretta Crockett should be granted in part and denied in part. The Motion [79] for Summary Judgment for Failure to Exhaust Administrative Remedies filed by Defendant Commissioner Burl Cain should also be granted in part and denied in part. Plaintiff's claims about secondhand smoke should proceed, but the undersigned recommends that the Court dismiss Plaintiff's unexhausted claims about prison management, understaffing, and conspiracy.

## V.   NOTICE OF RIGHT TO APPEAL/OBJECT

Within fourteen days of being served with a copy of this Report and Recommendation, any party may serve and file written objections with the Clerk of Court. An objecting party must specifically identify the findings, conclusions, and recommendations to which he objects. Within seven days of service of the objections, the opposing party must either serve and file a response or notify the District Judge that he does not intend to respond to the objections. L. U. Civ. R. 72(a)(3).

The District Judge shall make a *de novo* determination of those portions of the Report and Recommendation to which objection is made. The District Judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge may also receive further evidence or

recommit the matter to the Magistrate Judge with instructions. *See* 28 U.S.C. § 636(b)(1).

The District Judge need not consider frivolous, conclusive, or general objections. A party who fails to file written objections to the proposed findings, conclusions, and recommendations of the Magistrate Judge shall be barred, except upon grounds of plain error, from attacking on appeal any proposed factual finding or legal conclusion adopted by the Court to which he did not object. *See Wallace v. Miss.*, 43 F.4th 482, 494-95 (5th Cir. 2022) (collecting cases).

**SIGNED,** this 6th day of June, 2023.

*s/ Bradley W. Rath*
BRADLEY W. RATH
UNITED STATES MAGISTRATE JUDGE